IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PEERLESS INSURANCE COMPANY,        )
                                   )   Civil Action
              Plaintiff            )   No. 06-CV-03653
                                   )
         vs.                       )
                                   )
BROOKS SYSTEMS CORPORATION,        )
                                   )
              Defendant            )

                              *    *    *

APPEARANCES:

          CHESTER F. DARLINGTON , ESQUIRE
               On behalf of Plaintiff

          MARK S. SIGMON, ESQUIRE
               On behalf of Defendant

                              *    *    *


M E M O R A N D U M

JAMES KNOLL GARDNER,
United States District Judge


     This matter is before the court on Plaintiff Peerless
Insurance Company's Motion for Summary Judgment, which motion was
filed June 1, 2007.  Defendant's Answer in Opposition to the
Plaintiff's Motion for Summary Judgment was filed June 26, 2007.
For the reasons expressed below, I grant plaintiff's motion for
summary judgment.

     Specifically, I conclude that plaintiff Peerless
Insurance Company does not owe defendant Brooks Systems
Corporation any duty to defend or indemnify under either the

commercial general liability or umbrella insurance policies issued by plaintiff to defendant.  Accordingly, I enter judgment in favor of plaintiff Peerless Insurance Company and against defendant Brooks Systems Corporation on Counts I and III of plaintiff's Second Amended Complaint for Declaratory Judgment.

Furthermore, I declare that plaintiff has no duty to defend or indemnify defendant Brooks Systems Corporation for claims brought in the underlying action of <u>Ash Grove Cement Company v. Brooks Systems Corporation</u>, No. 04-719, County of Baker, Circuit Court of the State of Oregon.  Finally, because I have entered declaratory judgment of Counts I and III, I dismiss Counts II, IV, V and VI of plaintiff's Second Amended Complaint for Declaratory Judgment as moot.

<u>JURISDICTION</u>

This action is before the court on diversity jurisdiction.  Plaintiff Peerless Insurance Company is an insurance company licensed to issue insurance policies in the Commonwealth of Pennsylvania and is incorporated under the laws of the State of New Hampshire.  Defendant Brooks Systems Corporation is a Pennsylvania corporation with a principal place of business in Nazareth, Northampton County, Pennsylvania.  The amount in controversy is in excess of $75,000.  <u>See</u> 28 U.S.C. § 1332.

VENUE

Venue is proper because plaintiff alleges that defendant resides in, and a substantial part of the events or omissions giving rise to the cause of action occurred in, Northampton County, Pennsylvania, which is in this judicial district. 28 U.S.C. §§ 118, 1391.

PROCEDURAL HISTORY

This matter is before the court on the Second Amended Complaint for Declaratory Judgment filed July 6, 2007 by plaintiff Peerless Insurance Company ("Peerless").  Plaintiff seeks an Order declaring that it does not have a duty to defend or indemnify defendant Brooks Systems Corporation for claims brought in the underlying action of Ash Grove Cement Company v. Brooks Systems Corporation, No. 04-719, County of Baker, Circuit Court of the State of Oregon.

Plaintiff seeks declaratory judgment on both its primary policy of insurance (policy number CBP9589877)("primary policy") and its umbrella policy (policy number CU9581082)("umbrella policy") and the renewal of these policies from May 26, 2002 until May 27, 2007.  On July 10, 2007 Defendant's Answer to Plaintiff's Second Amended Complaint was filed.

On July 18, 2007 oral argument was conducted on plaintiff's motion for summary judgment.  At the conclusion of

oral argument I took this matter under advisement.  Hence, this
Memorandum.

<u>Plaintiff's Second Amended Complaint</u>

Plaintiff's Second Amended Complaint for Declaratory
Judgment contains six counts for declaratory judgment based upon
numerous policy provisions and exclusions contained in both the
primary and umbrella policies, similar to the claims contained in
plaintiff's original and first amended complaints.

In Count I plaintiff avers that the allegations
contained in the underlying <u>Ash Grove</u> Complaint do not fall
within plaintiff's primary policy.

Count II alleges that there are applicable exclusions
contained in the primary policy.

In Count III plaintiff contends that the allegations
contained in the underlying <u>Ash Grove</u> Complaint do not fall
within plaintiff's umbrella policy.

Count IV alleges that there are applicable exclusions
contained in the umbrella policy.

Count V, under Pennsylvania law, asserts that the
known-loss doctrine prohibits obtaining insurance for a loss that
either has already taken place or is in progress at the time
insurance coverage was obtained.

Finally, in Count VI, plaintiff avers that both its
primary and umbrella policies require defendant as soon as

practicable to notify plaintiff of an occurrence or offense that
may result in a claim.  Plaintiff further avers that defendant
failed to comply with this duty, and that plaintiff has been
prejudiced by defendant's failure to notify plaintiff about the
loss in this case.  As a result plaintiff seeks a judgment
declaring that plaintiff has no obligation to defend or indemnify
defendant's potential losses regarding the underlying <u>Ash Grove</u>
litigation.

At this time, plaintiff seeks summary judgment on
Counts I through IV only.[1]

<u>Ash Grove Complaint</u>

On December 10, 2004 Ash Grove Cement Company filed a
lawsuit against Brooks Systems Corporation in the Circuit Court
of the State of Oregon.  On August 16, 2006 Ash Grove filed a
Second Amended Complaint which is now the operative pleading in
that action.

The Second Amended Complaint alleges that in January
2000 Ash Grove and Brooks Systems entered into an agreement under
which Brooks Systems agreed to design and construct material
crushing, screening and handling structures and equipment at Ash
Grove's quarry and cement plant in Durkee, Oregon.  After

---

[1]    At the December 27, 2007 telephone status conference conducted
with counsel pursuant to Rule 16 of the Federal Rules of Civil Procedure,
counsel agreed that the case should be bifurcated to permit plaintiff to
initially proceed on Counts I through IV of its Complaint, including
conducting discovery and filing dispositive motions.  Counsel agreed that if I
denied plaintiff's dispositive motion on Counts I through IV, then the parties
would proceed with discovery and dispositive motions on Counts V and VI.

beginning to use the structure and equipment designed and constructed by Brooks Systems, Ash Grove alleges that it discovered defects in certain portions of the equipment.

Ash Grove contends that because of the defects, certain parts of the equipment became severely distressed, and Ash Grove was unable to use it as designed and required. Ash Grove avers that it has incurred or will incur costs in excess of $4,000,000 to repair, replace or relocate the equipment.

The first claim for relief in the Second Amended Complaint is for "Breach of Professional Services Contract". In that count, Ash Grove alleges that Brooks Systems breached the contract between the parties.

The second claim for relief is for "Breach of Warranty". In that cause of action, Ash Grove alleges that Brooks Systems provided certain express warranties in the contract and that defects in the equipment breached the express warranties set forth in the contract.

Finally, the third claim for relief alleges "Professional Negligence". In that claim, Ash Grove alleges that Brooks Systems was obligated to perform its design-build services with reasonable care and that the design-build services were defective, deficient and negligent in one or more ways.

FACTS

Based upon the pleadings, record papers and exhibits, and the agreements of counsel at oral argument, the pertinent facts of the underlying loss in the Ash Grove case are as follows.

Initially, Brooks Systems never tendered a defense of the Ash Grove case to defendant.  When Brooks Systems received the Ash Grove Complaint, it tendered defense of the action to One Beacon Insurance Company, the commercial general liability insurer whose policy was in effect immediately prior to the Peerless policies.

This prior insurance was in effect when the property damage to the equipment first manifested itself.  One Beacon retained defense counsel for Brooks Systems and continues to defend the Ash Grove action through the filing of the within motion for summary judgment.  It was One Beacon that placed Peerless on notice of the Ash Grove case.  Peerless then brought the within action for declaratory judgment.

As early as February 2001, Ash Grove had formally put Brooks Systems on notice of problems with the mining equipment. Significantly, on February 8, 2001, Paul Reimer, an engineer from the Allentown, Pennsylvania civil engineering firm Reimer Associates, Inc., wrote to Ash Grove Cement Company confirming

his retention by Brooks Systems to investigate problems and settling associated with "Reclaim Tunnel 282.TN2".[2]

In the February 8th letter, Mr. Reimer confirmed that there would be a site inspection at the quarry on February 19, 2001 to review the structures provided by Brooks Systems. Mr. Reimer confirmed that there had been a production problem with the "fines hopper", as two rock shelves did not go through the hopper quickly enough.

On March 5, 2001, Mr. Reimer issued a report to Brooks Systems regarding his inspection which occurred on February 20 and 21, 2001. Mr. Reimer concluded that the fines hopper failed when the hopper filled with material sagged onto the conveyer belt.[3]

On February 22, 2001, Brooks Systems' home office in Nazareth, Pennsylvania faxed to Brook Systems representative Bryan Brooks in Oregon a 16-page facsimile regarding settling and foundations.[4] The facsimile contained a textbook or hornbook excerpt on these issues.

Around this time, another engineering firm inspected the quarry. On March 7, 2001, Kleinfelder Engineers issued a

---

[2]     See Plaintiff's Exhibits for Motion for Summary Judgment, ("Plaintiff's Exhibits"),  Exhibit H .

[3]     Plaintiff's Exhibit J.

[4]     Plaintiff's Exhibit K.

report to Brooks Systems.[5]  With the permission of Brooks
Systems, Kleinfelder inspected the quarry on March 1, 2001.  The
purpose of Kleinfelder's involvement was memorialized in the
first paragraph of the March 7, 2001 report:

> Kleinfelder is pleased to submit our conclusions
> and recommendations concerning the distress
> associated with the Reclaim Tunnel 282.TN2 at the
> Ash Grove Cement facility in Durkee, Oregon. The
> purpose of this preliminary investigation was to
> observe site conditions and develop preliminary
> recommendations to mitigate lateral displacement
> and settlement of the top of the tunnel.  We
> received your written authorization for our
> limited investigation on 1 March 2001.

In the March 7, 2001 report, Mr. Kleinfelder noted the
following history of the problem:

> During the stockpiling of mine limestone material
> the tunnel experienced [distress] in the form of
> settlement of the base of the tunnel of
> compression or squashing of the tunnel itself, and
> lateral displacement of the tunnel.  The drainage
> valley adjacent to the tunnel was also filled
> during the stockpiling operations.  It is our
> understanding that the stockpiling material over
> the tunnel and subsequent transport operation of
> the tunnel ceased once the hopper openings settled
> to the point where they impeded the rotation of
> the conveyor belt.  The stockpile material was
> then removed. Mr. Brooks indicated that the stress
> port tunnel is approximately 80 feet in length.

In conclusion, Mr. Kleinfelder wrote:

> Comparing the dimensions of the tunnels with no
> visual indications of distress without the
> dimensions of the distress tunnel 282.TN2,
> indicates that the tunnel compressed or squashed
> downward to the right (downslope).

---

[5]     Plaintiff's Exhibit E.

It is our understanding and based on the
discussions with Mr. Brooks and the plan manager
for Ash Grove that similar design and tunnels
elsewhere on site have stockpile loads in excess
of those on tunnel T82.TN2; therefore, in our
opinion the tunnel distress does not appear to be
a function solely on tunnel strength, but a
function of lateral confining pressure on the side
of the tunnel.

The lateral confirming pressure on a downhill
side of the tunnel was limited due to the
descending slope (drainage valley), which resulted
in roughly a 12 foot zone of backfill.  When the
tunnel was surcharged with mine limestone
material, there was not adequate lateral pressure
from the backfill soil on the downhill side of the
tunnel, and the tunnel structure compressed as
soil shifted downslope.

(Plaintiff's Exhibit E, pages 3 and 4.)

In addition to the Kleinfelder investigation, One
Beacon retained an investigator who interviewed various people
who worked at Ash Grove.  The interviews further confirmed that
Ash Grove first noticed a problem with the tunnel sometime in
late January or early February 2001.[6]

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court
must determine whether "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue of
material fact and that the moving party is entitled to judgment
as a matter of law."  Fed.R.Civ.P. 56(c); <u>Anderson v. Liberty</u>

---

[6]     See Plaintiff's Exhibits F, G and I.

<u>Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); <u>Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company</u>, 316 F.3d 431, 433 (3d Cir. 2003).  Only facts that may affect the outcome of a case are "material".  Moreover, all reasonable inferences from the record are drawn in favor of the non-movant.  <u>Anderson</u>, <u>supra</u>.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  <u>See</u> <u>Watson v. Eastman Kodak Company</u>, 235 F.3d 851, 858 (3d Cir. 2000).  Plaintiff cannot avert summary judgment with speculation or by resting on the allegations in its pleadings, but rather must present competent evidence from which a jury could reasonably find in its favor. <u>Ridgewood Board of Education v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999); <u>Woods v. Bentsen</u>, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

<u>CONTENTIONS</u>

<u>Plaintiff's Contentions (Initial Brief)</u>

Plaintiff raises five arguments in support of its motion for summary judgment.

Initially, plaintiff argues that, as a matter of law, the factual allegations of the underlying <u>Ash Grove</u> Complaint are claims of faulty workmanship and do not constitute an

"occurrence"[7] as defined in the applicable insurance policies. Specifically, plaintiff contends that what is alleged in the Ash Grove Complaint is property damage arising from the faulty design or construction of certain mining equipment by defendant Brooks Systems.

Plaintiff claims that pursuant to the decision of the Supreme Court of Pennsylvania in Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Company, 589 Pa. 317, 908 A.2d 888 (Pa. 2006), there is no coverage for faulty workmanship claims under occurrence-based insurance policies in Pennsylvania because an occurrence is an accident, and an accident implies a degree of fortuity that is not present in a claim of faulty workmanship.

Next, plaintiff asserts that there is no coverage for breach of contract or breach of warranty claims because they do not constitute an "occurrence" under a liability policy. Furthermore, plaintiff argues that claims that are couched as negligence where the real gist of the action lies in contract are not an occurrence under a liability policy. Plaintiff relies for this proposition on the decision of the Superior Court of Pennsylvania in Freestone v. New England Log Homes, Inc.,

---

[7]    In policy number CBP9589877 (the primary commercial general liability policy in effect) "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  (See Commercial General Liability Coverage Form, Section V(13), Plaintiff's Exhibit C).  In addition, the term "occurrence" is similarly defined in umbrella policy number CU 9581082.  Moreover, the term is defined similarly in the various renewals of both policies.

819 A.2d 550 (Pa.Super. 2003).  Plaintiff asserts that the reason for a finding of no coverage in this circumstance is that an occurrence-based policy does not insure "business practices" of the insured or obligations the insured agrees to in a contract.

Peerless contends that the Ash Grove plaintiffs have asserted a claim for professional negligence.  Peerless asserts that the gist-of-the-action doctrine provides that a claim should be limited to a contract claim when the parties' obligations are defined by the terms of a contract, and are not defined by the law of torts.  Plaintiff further argues that under the gist-of-the-action doctrine such tort claims are not insurable as a matter of law.  For this proposition, plaintiff relies on Phico Insurance Company v. Presbyterian Medical Services Corporation, 444 Pa.Super. 221, 663 A.2d 753 (Pa.Super. 1995).

Moreover, plaintiff contends that defendant concedes in its response to this motion that the professional negligence claim in the Ash Grove case arises from contract and sounds in contract.  Thus, plaintiff contends that it is not required to defend or indemnify the professional negligence claim.

Next, plaintiff claims that the loss in this case manifested itself prior to the inception date of the first insurance policy issued by plaintiff to defendant.  Even if the allegations could be deemed to otherwise be an occurrence under Pennsylvania law, plaintiff asserts that the property damage did

not occur within the policy period of the first insurance contract between the parties because the precise date in which the loss started predated any policy of insurance.

Plaintiff relies on the decision of the United States Court of Appeals for the Third Circuit in <u>Appalachian Insurance Company v. Liberty Mutual Insurance Company</u>, 676 F.2d 5 (3d Cir. 1982) and subsequently adopted by the Superior Court of Pennsylvania in <u>D'Auria v. Zurich Insurance Company</u>, 352 Pa.Super. 231, 507 A.2d 857 (Pa.Super. 1986) to support the position that an occurrence happens when the injurious effects of the act first manifests itself in a way that would put a reasonable person on notice of the injury.

In this case, plaintiff contends that the injury first manifested itself in January or February 2001 and that the Peerless insurance policies did not go into effect until May 26, 2002, over one year later.  Thus, plaintiff asserts that, as a matter of law, the property damage first "occurred" prior to any policy of insurance by plaintiff went into effect.

Finally, plaintiff alleges that certain business risk and professional liability policy exclusions contained in the insurance contract between the parties apply.  Thus, based upon these other exclusions, plaintiff argues that it has no duty to defend or indemnify.

-14-

<u>Defendant's Contentions</u>

Defendant contends that the preparation of the soil and compaction of the same is a service and not a product.  Defendant relies on a number of cases for this proposition.  <u>Fireguard Sprinkler Systems v. Scottsdale, Inc.</u>, 864 F.2d 648 (9th Cir. 1988); <u>Clements and Montgomery, D.B.A.C. & M. Contractors v. Aetna Casualty & Surety Co.</u>, 15 Ohio Misc. 252, 236 N.E.2d 799 (1968); <u>Kissel v. Aetna Casualty & Surety Co.</u>, 380 S.W.2d 497 (Mo.App. 1964).

Defendant asserts that it was neither the tunnel nor any of its components used in the business that are claimed to be defective by Ash Grove in its underlying Complaint.  Rather, the defendant contends that the underlying <u>Ash Grove</u> claim is that the tunnel was damaged as a result of settling of the soil upon which the tunnel had been laid, not that the tunnel nor any of its components are defective.  Therefore, defendant argues that the tunnel and the components of the system were damaged as a result of the accidental settling of the surrounding soil, not because they were defective.

Moreover, defendant argues that there were numerous attempts to cure the problems with the tunnel.  Defendant asserts that the problems started in 2001 and that all the problems were cured and the job paid in full in 2001.  Thus, defendant contends

that it was not until 2003 that it became evident that the tunnel became of little or no functionality.

Defendant relies on the decision of the United States Court of Appeals for the Ninth Circuit in Fireguard Sprinkler, supra, for the proposition that site preparation is a service not a product. Thus, defendant argues that the products exclusion in the insurance contract does not apply.

Next, defendant contends that the date that the tunnel was deemed to be of little or no functionality is the date of the "occurrence" in this case rather than the date of the manifestation of any problems with the tunnel. In this regard, defendant contends that problems "manifested" themselves almost immediately upon completion of the contract. However, defendant again asserts that some time period for cure should be allowed, and that it did "cure" to the point that Ash Grove paid for the completed work in full.

Finally, defendant relies on the decision of the United States District Court for the District of Rhode Island in Bartholomew v. Insurance Company of America, 502 F.Supp. 246 (D.R.I. 1980) for the proposition that the time of the complaint for damages is what controls whether there is insurance coverage if there is no knowledge by the insured that the product was incapable of fulfilling its intended purpose before the time of the filing of the Complaint.

-16-

<u>Plaintiff's Contentions (Reply Brief)</u>

In its reply brief, plaintiff asserts that defendant's argument regarding a product versus a service was rejected by the Supreme Court of Pennsylvania's decision in <u>Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Insurance Company</u>, 512 Pa. 420, 517 A.2d 910 (Pa. 1986).

Furthermore, plaintiff contends that defendant's reliance on the <u>Bartholomew</u> case from Rhode Island is misplaced because the Superior Court of Pennsylvania specifically considered and rejected the reasoning of that case in <u>D'Auria</u>, <u>supra</u>.

Finally, plaintiff contends that settlement of the soil began in 2001, and trying to separate settlement of the land that occurred later is inappropriate.  The loss in this case began in 2001 and plaintiff contends that the period during which the loss began predates the insurance contracts it later entered into with defendant.  Thus, plaintiff argues that it should not be required to defend a loss that occurred prior to the date of insurance.

<u>DISCUSSION</u>

The parties have stipulated that Pennsylvania law applies to the issues in this lawsuit.[8]  Under Pennsylvania law, the standard for evaluating whether a duty to defend or indemnify exists depends on a determination of whether the third-party's

---

[8]    See Plaintiff Peerless Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment, page 16, n.15.

complaint triggers coverage.  <u>Mutual Benefit Insurance Company v.</u>
<u>Haver</u>, 555 Pa. 534, 725 A.2d 743 (Pa. 1999).  The insurer's
obligation to defend is determined solely by the allegations
contained on the face of the underlying Complaint.

Moreover, an insurer is not required to defend a claim
when it is apparent on the face of the Complaint that none of the
injuries fall within the purview of the insurance policy.
<u>Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial</u>
<u>Union Insurance Company</u>, 589 Pa. 317, 908 A.2d 888 (Pa. 2006).  A
duty to defend can exist without a duty to indemnify.  However, a
duty to indemnify cannot exist without a duty to defend.  <u>The</u>
<u>Frog, Switch & Manufacturing Co., Inc. v. The Travelers Insurance</u>
<u>Company</u>, 193 F.3d 742 (3d Cir. 1999).

Initially, I note that because both in its brief and at
oral argument defendant conceded that all the underlying claims
in the <u>Ash Grove</u> case involve contract claims, it is unnecessary
for me to analyze plaintiff's gist-of-the-action doctrine
arguments.

Next, I address whether there was an "occurrence" in
this case.  As noted above, plaintiff contends that there is no
occurrence to trigger its obligation to defend or indemnify
defendant in the <u>Ash Grove</u> case.  I agree.

Pennsylvania caselaw is clear that a claim for breach
of contract and breach of warranty do not constitute an

"occurrence" under a general liability policy.  <u>Freestone v. New England Log Homes, Inc.</u>, 819 A.2d 550 (Pa.Super. 2003).  The recent decision of the Supreme Court of Pennsylvania in <u>Kvaerner</u>, <u>supra</u>, is even more dispositive.  In <u>Kvaerner</u>, Bethlehem Steel sued Kvaerner Metals asserting claims for breach of contract and breach of warranty regarding the design and construction of a coke oven battery for Bethlehem Steel.

There, the state Supreme Court specifically held that: (1) an insurer's obligation to defend is determined solely by the allegations contained on the face of the underlying Complaint; (2) the definition of an "accident" required to establish an "occurrence" cannot be satisfied by claims based upon faulty workmanship; and (3) because faulty workmanship does not constitute an "accident" as required to set forth an "occurrence" under commercial general liability insurance policies, an insurance company has no duty to defend or indemnify in an action for faulty workmanship.  <u>Kvaerner</u>, <u>supra</u>

A review of the underlying <u>Ash Grove</u> Complaint reveals that Ash Grove claims Brooks Systems breached its professional duties and failed to render its agreed-upon professional services under the agreement between the parties in numerous ways. Specifically, Ash Grove contends that Brooks Systems failed to, among other things, do the following: (1) provide a site plan and construct the tunnel structure properly; (2) adequately plan for

settlement of the soils under and near the tunnel; (3) manage the
placement and compaction of the backfill near the tunnel;
(4) follow acceptable industry standards for construction;
(5) meet the terms of the warranties given to Ash Grove;
(6) obtain and follow an adequate geo-technological site
evaluation regarding construction of the tunnel; and (7) furnish
a product that is free from faults, or defects in design,
workmanship and materials.[9]

Because the allegations of the of the <u>Ash Grove</u>
Complaint clearly allege faulty workmanship within the parameters
of the Supreme Court of Pennsylvania's decision in <u>Kvaerner</u>, and
because faulty workmanship cannot constitute an "occurrence"
pursuant to the holding of <u>Kvaerner</u>, I conclude that Peerless has
no duty to defend or indemnify Brooks Systems in the underlying
<u>Ash Grove</u> case under either the primary or umbrella policies it
issued to Brooks Systems.

Next, I address plaintiff's assertion that the alleged
property damage did not occur within the policy period of the
first insurance contract between the parties because the precise
date in which the loss started predated any policy of insurance.
Plaintiff relies on the decision of the United States Court of
Appeals for the Third Circuit in <u>Appalachian Insurance Company v.
Liberty Mutual Insurance Company</u>, 676 F.2d 5 (3d Cir. 1982) and

---

[9]   See Plaintiff's Exhibit A.

the decision of the Superior Court of Pennsylvania in <u>D'Auria v.</u>
<u>Zurich Insurance Company</u>, 352 Pa.Super. 231, 507 A.2d 857
(Pa.Super. 1986) to support its position that an occurrence
happens when the injurious effects of the act first manifests
itself in a way that would put a reasonable person on notice of
the injury.

 Defendant relies on the decision of the United States
District Court for the District of Rhode Island in <u>Bartholomew v.</u>
<u>Insurance Company of America</u>, 502 F.Supp. 246 (D.R.I. 1980) for
the proposition that it is the time of the Complaint for damages
which controls whether there is insurance coverage if there is no
knowledge that the product was incapable of fulfilling its
intended purpose before the time of the filing of the Complaint.
For the following reasons, I agree with plaintiff.

 As a preliminary matter, because it appears that there
is no decision on this legal issue from the Supreme Court of
Pennsylvania, I must decide what test that Court would employ in
determining when an occurrence happens.  As a United States
District Court exercising diversity jurisdiction, I am obliged to
apply the substantive law of Pennsylvania.  <u>See</u> <u>Erie Railroad</u>
<u>Co. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

 If the Pennsylvania Supreme Court has not addressed a
precise issue, a prediction must be made, taking into
consideration "relevant state precedents, analogous decisions,

considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." <u>Nationwide Mutual Insurance Company v. Buffetta</u>, 230 F.3d 634, 637 (3d Cir. 2000) (citation omitted).

"The opinions of intermediate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise.'" 230 F.3d at 637 (citing <u>West v. American Telephone and Telegraph Co.</u>, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

Based upon the reasoning of the Third Circuit in <u>Appalachian Insurance Company</u>, and the Superior Court's rejection in <u>D'Auria</u> of the holding of the United States District Court for the District of Rhode Island in <u>Bartholomew</u>, I conclude that the Supreme Court of Pennsylvania would rule that an occurrence happens when the injurious effects of the act first manifests itself in a way that would put a reasonable person on notice of the injury, not when a Complaint for damages is first filed.

Next, I address defendant's assertion that preparation and compaction of the soil is a service and not a product. Defendant relies on a number of cases for this proposition. <u>Fireguard Sprinkler Systems v. Scottsdale, Inc.</u>, 864 F.2d 648 (9th Cir. 1988); <u>Clements and Montgomery, D.B.A.C. & M.</u>

<u>Contractors v. Aetna Casualty & Surety Co.</u>, 15 Ohio Misc. 252,
236 N.E.2d 799 (1968); <u>Kissel v. Aetna Casualty & Surety Co.</u>,
380 S.W.2d 497 (Mo.App. 1964).

     On the contrary, plaintiff asserts that defendant's
argument regarding a product versus a service is belied by the
Supreme Court of Pennsylvania's decision in <u>Gene & Harvey</u>
<u>Builders, Inc. v. Pennsylvania Manufacturers'Association</u>
<u>Insurance Company</u>, 512 Pa. 420, 517 A.2d 910 (Pa. 1986).  I
agree.

     As noted above, in a diversity of citizenship case I am
obliged to apply the substantive law of Pennsylvania.  <u>See</u> <u>Erie</u>
<u>Railroad Co.</u>, <u>supra</u>.  Where the highest court of the state has
specifically ruled on an issue, I am bound by that determination
of state law.

     In <u>Harvey Builders</u>, the issue was whether a general
liability insurance policy obligated the insurance company to
defend and indemnify its insured, a building contractor, against
a lawsuit filed by a homeowner who claimed that the house,
constructed by the insured contractor, had become uninhabitable
because it was negligently built on land which had subsided.  The
Supreme Court of Pennsylvania found that all the claims concerned
damage to the product (the house) arising from a part of the
product (the land).

Specifically, the Supreme Court held that one of the builder's duties was to be reasonably prudent in the placement of the house because one "does not contract for the building of a house in the sky; of necessity, houses must rest on the earth." 512 Pa. at 427, 517 A.2d at 913.  Thus, the Supreme Court held that the earth upon which the house was placed was part of the builder's product, not a service performed by the builder.

In this case, the tunnel constructed by Brooks Systems would obviously be placed below the earth and would need to be adequately supported so as not to collapse.  Moreover, Ash Grove specifically avers that Brooks Systems breached its contract and the warranties given by failing to adequately plan for the settlement of soils under and near the tunnel.

Based upon the decision of the Supreme Court of Pennsylvania in Harvey Builders, I conclude that pursuant to Pennsylvania law, placement of the tunnel and appropriate planning for settlement of the land were part of the product, not a service as alleged by defendant.

Finally, because my determinations above are case-dispositive, I conclude that it is unnecessary to consider whether plaintiff's other alleged business risk and professional liability policy exclusions contained in the insurance contract between the parties apply.

CONCLUSION

For all the foregoing reasons, I grant plaintiffs' motion for summary judgment on Counts I and III of the Second Amended Complaint for Declaratory Judgment.  I declare that plaintiff has no duty to defend or indemnify defendant Brooks Systems Corporation for claims brought in the underlying action of <u>Ash Grove Cement Company v. Brooks Systems Corporation</u>, No. 04-719, County of Baker, Circuit Court of the State of Oregon.

Furthermore, because I have granted summary judgment on Counts I and III, Counts II, IV, V and VI of are dismissed as moot from the Second Amended Complaint for Declaratory Judgment.